UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
DON DIFIORE, LEON BAILEY,      )
JAMES E. BROOKS, and all others )
similarly situated,            )
                               )
          Plaintiffs,          )
                               )
          v.                   )   CIVIL ACTION
                               )   NO. 07-10070-WGY
AMERICAN AIRLINES, INC.,       )
                               )
          Defendant.           )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                        April 12, 2007

     Airline passengers generally tip skycaps who help them with
their baggage.  In 2005, American Airlines ("American")
instituted a service charge of $2 per bag on bags handled at the
curbside.  Skycaps collect, but American retains, the resulting
revenues.  Few passengers have tipped in addition to paying the
new fee.  The skycaps accuse American of diverting tip revenue to
itself in violation of the Massachusetts Tips Law, Mass. Gen.
Laws ch. 149, § 152A.  American's ripost is that the skycaps'
claims are preempted by the Airline Deregulation Act of 1978,
Pub. L. No. 95-504, 92 Stat. 1705 (codified as amended at 49
U.S.C. § 40101 et seq.).

I.     **PROCEDURAL POSTURE**

The skycaps filed the instant action on December 20, 2006 as a putative class action in the Massachusetts Superior Court sitting in and for the County of Suffolk.  Notice of Removal [Doc. No. 1], Ex. A.  The putative class named two employers as defendants: G2 Secure Staff, LLC ("G2"), which employs skycaps for airlines, and American.  Id. at 2.  American removed to this Court on January 16, 2007.  The skycaps amended their complaint on January 24, 2007 to allege the following counts: (1) violation of the Massachusetts Tips Law, Mass. Gen. Laws ch. 149, § 152A; (2) violation of the state minimum wage law, Mass. Gen. Laws ch. 151, §§ 1, 7; (3) tortious interference with contractual or advantageous relations; (4) quantum meruit; (5) conversion; and (6) unjust enrichment.  Am. Compl. [Doc. No. 8] at 5-7.  The skycaps have requested a trial by jury on all their claims.  Id. at 7.

American and G2 each moved to dismiss.  In G2's motion to dismiss, G2 argued, inter alia, that its employees were required to arbitrate their claims pursuant to their employment agreement. G2's Mem. in Support of G2's Mot. to Dismiss [Doc. No. 21] at 16-17.  In the skycaps' opposition, the skycaps stated that they had not been aware of the arbitration agreement, but, having had the chance to review the agreement, would submit to arbitration on all of their claims against G2.  Pls.' Response to Defs.' Mot. to

Dismiss [Doc. No. 24] at 2.  The skycaps further clarified that their minimum wage claim was against G2 only.  <u>Id.</u> at 4.  G2 was voluntarily dismissed without prejudice from the case on March 22, 2007.  Stipulation of Dismissal of All Claims Against G2 Secure Staff, LLC [Doc. No. 25].

As a result of the skycaps' concessions, American is the only defendant remaining in the case.  At the hearing on March 29, 2007, this Court denied as moot American's motion to dismiss the minimum wage claim.  This Court took under advisement the motion to dismiss the remaining claims.  Those claims are the subject of this memorandum and order.

## II.  DISCUSSION

### A.  Alleged Facts

Since American has moved to dismiss, the facts alleged in the skycaps' amended complaint are assumed true for purposes of this motion.  <u>See</u> <u>Arturet Velez</u> v. <u>R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 (1st Cir. 2005).  Skycaps who work at airports have traditionally received most of their compensation from tips given to them by airline passengers.  Am. Compl. ¶ 11.  In the fall of 2005, however, American began assessing a $2 per bag service charge on passengers.  <u>Id.</u> ¶ 12.  American implemented the fees at airports around the country, including Logan Airport in Boston, Massachusetts.  <u>Id.</u> ¶ 13.  American has retained these fees.  <u>Id.</u> ¶¶ 15-16.  Passengers continue to believe that they

are tipping the skycaps when they pay the $2 fee.  See id. ¶ 2.
Of those who are aware that gratuity is not included, few
voluntarily tip in addition to paying the charge.  Id. ¶ 17.
Consequently, the compensation that skycaps receive has fallen
dramatically.  Id.  The skycaps seek disgorgement of the $2 fees
on the ground that the fees are really tips.  Id. ¶ 3.

### B.   Preemption

American contends that the skycaps' claims are preempted on
two grounds.  First, American argues that the Airline
Deregulation Act expressly preempts the skycaps' claims.
American's Memorandum of Law in Support of Its Mot. to Dismiss
[Doc. No. 23] ("American Mem.") at 5-8.  Second, American argues
that the statute impliedly preempts the skycaps' claims.  Id. at
8-11.  These arguments are addressed in turn.

### 1.   Express Preemption

There is a presumption against preemption.  E.g., New York
State Conference of Blue Cross & Blue Shield Plans v. Travelers
Ins. Co., 514 U.S. 645, 654 (1995).  This presumption has more
bite "where federal law is said to bar state action in fields of
traditional state regulation."  Id. at 655.  Accordingly, "the
historic police powers of the States [a]re not to be superseded
by [a] Federal Act unless that was the clear and manifest purpose
of Congress."  Id. (quotation marks omitted).

The Airline Deregulation Act provides that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  This provision expresses a "broad pre-emptive purpose" in displacing state rules that pertain or refer to airline prices, routes, and services. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992). The Supreme Court has explained that the Airline Deregulation Act was motivated by "maximum reliance on competitive market forces" and sought "[t]o ensure that the States would not undo federal deregulation with regulation of their own."  Id. at 378. Accordingly, the Airline Deregulation Act preempts even state laws of general applicability that are consistent with the federal statute's goals.  Id. at 386-87.

The scope of this preemption, however, is not unlimited.  In Morales v. Trans World Airlines, Inc., the Supreme Court explained that "some state actions may affect airline fares in too tenuous, remote, or peripheral a manner" to have preemptive effect.  Id. at 390 (brackets and quotation marks omitted).  In American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), the Supreme Court carved out a further exception for "suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."  Id. at 228.

The skycaps accurately observe that claims brought by
airline employees generally escape preemption.  Every circuit
court but one to consider employee claims has held the claims at
issue not preempted.  See Gary v. Air Group, Inc., 397 F.3d 183
(3d Cir. 2005) (whistleblower retaliation claim not preempted);
Branche v. Airtran Airways, Inc., 342 F.3d 1248 (11th Cir. 2003)
(whistleblower retaliation claim not preempted); Air Transport
Ass'n of America v. City and County of San Francisco, 266 F.3d
1064 (9th Cir. 2001) (employee benefit antidiscrimination law not
preempted); Duncan v. Northwest Airlines, Inc., 208 F.3d 1112
(9th Cir. 2000) (personal injury claim not preempted); Wellons v.
Northwest Airlines, Inc., 165 F.3d 493 (6th Cir. 1999) (race
discrimination claim not preempted); Californians for Safe &
Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184 (9th
Cir. 1998) (prevailing wages law not preempted); Parise v. Delta
Airlines, Inc., 141 F.3d 1463 (11th Cir. 1998) (age
discrimination claim not preempted); Aloha Islandair Inc. v.
Tseu, 128 F.3d 1301 (9th Cir. 1997) (disability discrimination
claim not preempted); Abdu-Brisson v. Delta Airlines, Inc., 128
F.3d 77 (2d Cir. 1997) (age discrimination claim not preempted);
Anderson v. American Airlines, Inc., 2 F.3d 590 (5th Cir. 1993)
(retaliation claim not preempted).  But see Botz v. Omni Air
Int'l, 286 F.3d 488 (8th Cir. 2002) (whistleblower retaliation
claim preempted).  The rationale has generally been that while
state employment laws may relate to airline prices, routes, or

services, such a relationship is too tenuous to support preemption.  E.g., Gary, 397 F.3d at 189.

Most of the above-cited cases concern employment discrimination actions which "typically have been held to fall outside the scope of the [Airline Deregulation Act's] pre-emption clause."  Branche, 342 F.3d at 1259.  The few courts to address employment law claims outside the discrimination context have held such claims not preempted.  In Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184 (9th Cir. 1998), the Ninth Circuit addressed whether the federal statute preempted a state law requiring employers to pay prevailing wages.  The Ninth Circuit acknowledged that while the prevailing wages law was "in a certain sense" related to prices, routes, and services, the effect was "no more than indirect, remote, and tenuous."  Id. at 1189.  The Ninth Circuit so held even though the defendant contended that the prevailing wages law increased its prices by 25%, caused it to utilize independent contractors, and compelled it to re-direct and re-route equipment to compensate for lost revenue.  Id.

Mendonca is not the only case to so hold with respect to wage laws.  In Santoni Roig v. Iberia Lineas Aereas de Espana, 688 F. Supp. 810 (D.P.R. 1988), a district court held that there was no conflict between the Airline Deregulation Act and the local minimum wage and overtime pay laws.  Id. at 818.  In Dayhoff v. Temsco Helicopters, Inc., 848 P.2d 1367 (Alaska 1993),

7

the Alaska Supreme Court reached the same conclusion.  Id. at
1369-70.

These cases reflect the heightened presumption against
preemption in areas of traditional state regulation such as
employment law.  See Hawaiian Airlines, Inc. v. Norris, 512 U.S.
246, 252 (1994) ("Pre-emption of employment standards within the
traditional police power of the State should not be inferred
lightly.").  The Massachusetts Tips Law is, at its core, a wage
law.  The statute provides generally that tips belong to
employees.  Mass. Gen. Laws ch. 149, § 152A.  In this manner, it
is less invasive that the minimum wage and overtime pay laws that
surely affect the bottom line for airlines.  Tips are, after all,
meant only for employees and not the employer.  If consumers knew
that tips were for employers, then presumably consumers would not
give tips in the first instance.  In this way, a law that states
that voluntary tips are for employees has only a very attenuated
relationship, if at all, to airline prices, routes, or services.
Accordingly, this Court holds that the Airline Deregulation Act
does not expressly preempt the skycaps' claim under the
Massachusetts Tips Law.  Since the common law claims are based on
the same theory that American expropriated tips, this Court also
holds that those claims are not expressly preempted.

    **2.   Implied Preemption**

8

American next argues that the statute impliedly preempts the skycaps' claims.  The burden is on American, the party seeking preemption, to show that the federal regulatory scheme is so comprehensive as to suggest congressional intent to occupy the field exclusively or that a state law actually conflicts with a federal statute.  New York State Conference of Blue Cross & Blue Shield, 514 U.S. at 654-55; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230-31 (1947).

American argues that 49 U.S.C. § 41704 impliedly preempts the skycaps' claims.  The provision reads in full:

> Under regulations or orders of the Secretary of Transportation, an air carrier shall transport as baggage the property of a passenger traveling in air transportation that may not be carried in an aircraft cabin because of a law or regulation of the United States.  The carrier is liable to pay an amount not more than the amount declared to the carrier by that passenger for actual loss of, or damage to, the property caused by the carrier.  The carrier may impose reasonable charges and conditions for its liability.

By its own terms, section 41704 permits airlines to impose "reasonable charges and conditions" to cover the liability risks that the provision forces airlines to bear.  Implementing regulations govern damages for lost, delayed, or damaged baggage transported on any flight segment.  14 C.F.R. § 254.4; see also 14 C.F.R. § 254.1.

American claims that the $2 fee per bag constitutes a "reasonable charge[]" authorized by section 41704.  American states that the fee was designed to offset an "infrastructure

9

fee" that the Transportation Security Administration ("TSA")
imposed on airlines for passenger and property screening after
September 11, 2001.  American Mem. at 9-10.  American
characterizes this "infrastructure fee" as a "liability expense."
Id. at 10.  The Court does not find this argument persuasive.
Even if American faced increased risks for baggage liability as a
result of increased screening by a government agency, such
liability does not clearly relate to the mandatory stowing of
baggage that passengers cannot carry onboard.  In any event,
American can place service charges outside the ambit of the
Massachusetts Tips Law simply by clarifying that such fees do not
constitute tips to the skycaps.  There is therefore no conflict
between the statutes.

     There is also no field preemption.  American appears to
argue that section 41704 evinces congressional intent to occupy
the field of baggage liability.  Whatever the merits of that
argument, the Massachusetts Tips Law does not enter that field.
The Massachusetts Tips Law is a wage law that provides that tips
are meant for employees.  Federal law does not so thoroughly
occupy the field of airline employment "as to make reasonable the
inference that Congress left no room for the states to supplement
[federal law]."  Rice, 331 U.S. at 230.  Further, as discussed,
the overwhelming weight of authority is that the Airline
Deregulation Act does not expressly preempt state employment laws
even though such laws can impact airline profits.  The enactment

10

of a limited express preemption provision suggests that there is
no field preemption.  See Cipollone v. Liggett Group., Inc., 505
U.S. 504, 517 (1992).  Finally, the federal statute contains a
saving clause that preserves state law remedies not otherwise
preempted.  49 U.S.C. § 40120(c) (formerly codified at 49 U.S.C.
App. § 1506); see also Wolens, 513 U.S. at 232-33; Morales, 504
U.S. at 384-85;  Abdullah v. American Airlines, Inc., 181 F.3d
363, 375-76 (3d Cir. 1999).  This Court therefore rejects
American's argument that Congress intended to occupy the field of
airline regulation so exhaustively as to preempt even state
employment laws.

     For the foregoing reasons, this Court holds that American
has failed to overcome the presumption against preemption.  See
New York State Conference of Blue Cross & Blue Shield Plans, 514
U.S. at 654; Summit Inv. and Dev. Corp. v. Leroux, 69 F.3d 608,
610 (1st Cir. 1995).

          C.  Arbitration

     American argues in the alternative that at least some of the
skycaps must arbitrate their claims.  G2, the other defendant in
the case, has an arbitration agreement with its employees.  The
skycaps have agreed to arbitrate their claims against G2.
American seeks to piggyback onto this arbitration agreement.
This Court need not give more than passing attention to this
argument.  The arbitration agreement, by its own terms, is

limited in scope to claims arising between G2 and G2 employees.
G2's Mot. to Dismiss [Doc. No. 20], Ex. 1.  For this reason
alone, this Court rejects American's effort to compel
arbitration.

**D.   Merits**

With respect to the Massachusetts Tips Law claim, the
parties fully briefed only the preemption and arbitration issues.
American did not address the merits of the Massachusetts Tips Law
claim until its reply brief.  As such, the skycaps have not had
an opportunity to brief the merits of the claim and this Court
will not address the merits of that claim at this time.  The
parties do, however, reach the merits of the common law claims.

With respect to the claim for tortious interference with
advantageous relations, the skycaps may be able to establish that
American intentionally and maliciously interfered with their
enjoyment of an expectancy of tips from passengers.  See Comey v.
Hill, 387 Mass. 11, 19 (1982) (stating the elements of tortious
interference with advantageous relations).  The claims for
quantum meruit, conversion, and unjust enrichment may turn on
whether the $2 fees are really tips meant for the skycaps.  See
Williamson v. DT Mgmt., Inc., No. 021827D, 2004 WL 1050582, at
*12, *14 (Mass. Super. Mar. 10, 2004) (Haggerty, J.).  Since this
Court must assume for purposes of this motion to dismiss that the

service charges in fact constitute tips, this Court must deny American's motion to dismiss the common law claims on the merits.

**III. CONCLUSION**

For the foregoing reasons, American's motion to dismiss [Doc. No. 11] is DENIED.

SO ORDERED.

/s/ William G. Young

_____

WILLIAM G. YOUNG
DISTRICT JUDGE