UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DON DiFIORE, LEON BAILEY, JAMES E. BROOKS, RITSON DESROSIERS, MARCELINO COLETA, TONY PASUY, LAURENCE ALLSOP, CLARENCE JEFFREYS, FLOYD WOODS, ANDREA CONNOLLY,<br><br>          Plaintiffs,<br><br>          v.<br><br>AMERICAN AIRLINES, INC.,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  NO. 07-10070-WGY<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

YOUNG, D.J.                                    December 23, 2009


     In the fall of 2005, American Airlines, Inc. ("American")
instituted a fee of $2 per bag for curbside check-in service.
Traditionally, customers utilizing such services tipped skycaps
who helped them handle their bags.  American charged the new fee
in such a way ($2 per bag, in cash only, given directly to
skycaps) that made customers think they were still tipping
skycaps; the revenue, however, was either retained by American or
split between American and the skycaps' employers.  A number of
skycaps (the "Skycaps") brought this action claiming that the way

in which American charged the baggage handling fee amounted to diverting tip revenue to an employer in violation of the Massachusetts Tips Law, Massachusetts General Laws chapter 149, section 152A ("Tips Law").

American moved to dismiss on the ground that the Tips Law is preempted by the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 (codified as amended at 49 U.S.C. § 40101 et seq. (2009)) ("ADA"). This Court held that the action was not preempted. DiFiore v. American Airlines, Inc., 483 F. Supp. 2d. 121 (D. Mass. 2007). After an eleven-day trial, the jury found for the Skycaps and awarded damages. The Court, fearing that it had misdefined the Tips Law in the jury charge, certified a controlling question of state law to the Massachusetts Supreme Judicial Court. That Court confirmed the accuracy of the charge and emphasized the important state policies behind the Tips Law, DiFiore v. American Airlines, Inc., 454 Mass. 486, 497 (2009).

In the meantime, the Supreme Court decided Rowe v. New Hampshire Motor Transp. Ass'n, 128 S. Ct. 989 (2008),[1] a decision which led two of my colleagues to dismiss on preemption grounds actions similar to this one, but brought by skycaps against other airlines, Travers v. Jet Blue Airways Corp., No. 08-10730, 2009

_____

[1] Rowe analyzed preemption of the Federal Aviation Administration Authorization Act ("FAAAA"), a 1994 statute that borrows the language of the air-carrier preemption provision of the ADA and applies it to motor carriers. Rowe, 128 S. Ct. at 994-5.

WL 2242391, (D. Mass Jul. 23, 2009) (O'Toole, J.); <u>Brown</u> v.
<u>United Air Lines, Inc.</u>, No. 08-10689, 2009 WL 3008078 (D. Mass.
Sept. 22, 2009) (Gertner, J.); <u>Mitchell</u> v. <u>US Airways, Inc.</u>, No.
08-10629 (D. Mass. Sept. 22, 2009) (Gertner, J.) (order granting
partial motion to dismiss).  During the same interval, the
Massachusetts legislature, emphasizing the social policies behind
the Tips Law, amended the statute to require treble damages for
its violation.  "An Act Further Regulating Employee
Compensation," 2008 Mass. Acts. ch. 80.  Armed with these
developments, the parties gird for the next round.

 American requests relief from judgment pursuant to Federal
Rule of Civil Procedure 60(b) and moves for reconsideration of
its motion to dismiss.  American once again raises issues of
express and implied preemption.  The Court will only reconsider
the question of express preemption.  No arguable change in the
law has occurred as to the question of implied preemption.

The Skycaps, in turn, move to amend the judgment to treble
the damages awarded by the jury based on the newly enacted
amendment to Massachusetts General Laws chapter 149, section 150.
They also request that the Court amend the judgment to include
the $2 fees collected in March and April 2008 which were awarded
by the jury but not calculated at the time and the fees collected
from April 8, 2008 through June 15, 2008.

I.    **ANALYSIS**

    A.    **Background**[2]

    Skycaps who work at airports have traditionally received
most of their compensation from tips given to them by airline
passengers.  In the fall of 2005, however, American began
assessing a $2 per bag service charge on passengers.  The fee had
to be paid directly to skycaps in cash only.  American has
retained these fees or split them with the skycaps' actual
employer.  Passengers continue to believe that they are tipping
the skycaps when they pay the $2 fee.  Of those who are aware
that a gratuity is not included, few voluntarily tip in addition
to paying the charge.  American subsequently placed signs at the
curbside check-in terminal saying that a gratuity is not included
in the $2 fee, but the signs were wholly inadequate to inform the
busy airline traveler.  The compensation that the Skycaps receive
has fallen dramatically.

    The Skycaps claimed that American's actions violated the
Tips Law and sought disgorgement of the $2 fees.  Am. Compl.
[Doc. No. 8] at ¶3, Count 1.  They claimed that the way in which
the fee was charged, namely $2 collected in cash by skycaps at
curbside without adequate explanation that this was not a tip,
amounted to diverting tip revenue from employees.  The matter

_____

    [2] The factual recitation is taken from evidence in the trial
record supportive of the jury verdict.

proceeded to trial and on April 7, 2008, the jury returned a
verdict in favor of the Skycaps.  The jury awarded damages equal
to the sum of all $2 fees collected by the Skycaps from the time
the charge was implemented until the day of the verdict.  DiFiore
v. American Airlines, Inc., No. 07-10070, Jury Verdict (Apr. 7,
2008) [Doc. No. 145].  The jury calculated damages until March 1,
2008 only, because more recent data were not yet available.  Id.
American claimed that it could be responsible only for 60% of
these damages, because 40% was retained by contractors like G-2
who directly employed certain Skycaps.  The Court rejected this
argument.  The jury did not find that American had acted
outrageously or with reckless disregard of the Skycaps' rights
and, as a result, did not award the treble damages available
under Massachusetts General Laws chapter 149, section 150.

   B.   **Preemption**

      **1. Framework for Analysis**

   District courts have "substantial discretion" in ruling on
motions for reconsideration.  Serrano Perez v. FMC Corp., 985
F.2d 625, 628 (1st Cir. 1993).  To prevail, the moving party must
either present previously unavailable evidence or show that a
manifest error of law was committed.  Palmer v. Champion
Mortgage, 465 F.3d 24, 30 (1st Cir. 2006).

   When reviewing a motion to dismiss under Federal Rule of
Civil Procedure 12(b)(6), the court must decide whether the

plaintiffs have stated a claim upon which relief can be granted.
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  The court
will accept all allegations of fact in the complaint, with all
reasonable inferences drawn in favor of the plaintiffs.
Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Nevertheless,
the plaintiffs' factual allegations must be more than
speculative, and "require more than labels and conclusions."
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Following the jury verdict, the Skycaps' claim is based
solely on the Tips Law.  Thus, should the Court decide that the
Tips Law is preempted by the ADA, the Skycaps will have no viable
claim and American's motion to dismiss will be granted.

### 2. ADA Preemption of Employment Law

A question of preemption is a question of Congressional
intent.  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383
(1992).  Preemption analysis starts with a presumption against
preemption.  New York State Conference of Blue Cross & Blue
Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995).
The presumption against preemption is heightened in areas of
traditional state law regulation.  Id. at 655.  Thus, state laws
concerning matters traditionally regulated by states are
preempted only if Congress's intent to suppress state powers is
clear and manifest.  City of Columbus v. Ours Garage and Wrecker
Service, Inc., 536 U.S. 424, 438 (2002).

To establish Congress's preemptive intent, the primary focus must be on "plain wording." Sprietsma v. Mercury Marine, 537 U.S. 51, 62 (2002). The structure and purpose of the statute as a whole should also be taken into account. Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996). Such purpose is revealed "through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers and the law." Id.

The ADA provides that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1) (2009). The primary purpose of the ADA - as the name of the statute indicates - was to deregulate the airline industry. Congress intended to ensure "efficiency, innovation, and low prices" through "maximum reliance on competitive market forces." Morales, 504 U.S. at 378. Congress wanted to change the then-existing situation under which the airline industry had been subject to the extensive economic regulation by the Civil Aeronautics Board, which had to approve all airline management decisions regarding routes and prices before they could be implemented. H.R. Rep. No. 95-1211 at 2 (1978), reprinted in 1978 U.S.C.C.A.N. at 3737. The preemption provision was included to "ensure that the States would not undo federal deregulation

with regulation of their own." <u>Morales</u>, 504 U.S. at 378.  The
enactment history indicates a further intent not to harm
employees through the deregulation.  <u>Alaska Airlines, Inc.</u> v.
<u>Brock</u>, 480 U.S. 678, 680 (1987) ("Congress sought to ensure that
the benefits to the public flowing from this deregulation would
not be 'paid for' by airline employees who had relied on the
heavily regulated nature of the industry . . . .").

The Supreme Court has recognized the broad preemptive sweep
of the ADA.  <u>See</u> <u>Morales</u>, 504 U.S. at 383;  <u>Altria Group, Inc.</u> v.
<u>Good</u>, 129 S. Ct. 538, 548 (2008).  It has held that Congress
intended to preempt all state laws that refer to airline prices,
routes, and services and also those that have a forbidden
significant effect on them.  <u>Morales</u>, 504 U.S. at 388.  A law is
not preempted if it influences the prices and the services only
in a tenuous, remote, or peripheral manner.  <u>Id.</u> at 390.  <u>See,
e.g.</u>, <u>Kingsley</u> v. <u>Lania</u>, 221 F. Supp. 2d 93, 98 (D.Mass. 2002)
(Dein, M.J.).

As required by the Supreme Court, the Court's focus should
be on the effect of the law.  <u>Morales</u>, 504 U.S. at 384-5.  This
does not mean, however, that other characteristics of the
particular law (the area of regulation – economic,
environmental, employment, tax; the capacity in which airlines
are affected – as carriers, as members of general public; the way
in which burden is imposed – ban on primary conduct, detailed

procedures for compliance; aim and applicability of the law – directed to carriers primarily, law of general applicability) are not relevant to the analysis.

A good example is a law newly enacted by a state prohibiting the shipping of tobacco from unlicensed distributors into the state.  This law will require carriers to refuse a service that they would offer if motivated solely by competitive market forces.  It also will require carriers to implement some sort of verification or screening procedure they did not use before, and it may affect costs considerably.  It is obvious that such a law will have a significant effect on services and prices.  On the other hand, such a law is a law of general applicability, regulating an area traditionally within state powers.  It imposes a ban on primary conduct rather then regulating the particular actions of carriers.  Thus, in Rowe it was held that such law is not preempted by the FAAAA.  Rowe, 448 F.3d at 80 aff'd on other grounds Rowe, 128 S. Ct. 989.  A similar analysis is applicable to a state law prohibiting contraband or gambling, as well as to generally applicable tax, environmental, and blue-sky laws, which generally are not preempted by the ADA.  Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77, 84 (2d Cir. 1997).

A similar approach is applicable to preemption in the area of state employment law.  There is a consistent line of cases that find no preemption in employment disputes.  Every circuit

court but one to consider employee claims has held the claims at issue not preempted.  See Gary v. Air Group, Inc., 397 F.3d 183 (3d Cir. 2005) (whistleblower retaliation claim not preempted); Branche v. Airtran Airways, Inc., 342 F.3d 1248 (11th Cir. 2003) (whistleblower retaliation claim not preempted); Air Transport Ass'n of America v. City and County of San Francisco, 266 F.3d 1064 (9th Cir. 2001) (employee benefit antidiscrimination law not preempted); Wellons v. Northwest Airlines, Inc., 165 F.3d 493 (6th Cir. 1999) (race discrimination claim not preempted); Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184 (9th Cir. 1998) (prevailing wages law not preempted); Parise v. Delta Airlines, Inc., 141 F.3d 1463 (11th Cir. 1998) (age discrimination claim not preempted); Aloha Islandair Inc. v. Tseu, 128 F.3d 1301 (9th Cir. 1997) (disability discrimination claim not preempted); Abdu-Brisson, 128 F.3d 77 (2d Cir. 1997) (age discrimination claim not preempted); Anderson v. American Airlines, Inc., 2 F.3d 590 (5th Cir. 1993) (retaliation claim not preempted).  But see Botz v. Omni Air Int'l, 286 F.3d 488 (8th Cir. 2002) (whistleblower retaliation claim preempted).  The rationale generally has been that while state employment laws may relate to airline prices, routes, or services, such a relationship is too tenuous to support preemption.  E.g., Gary, 397 F.3d at 189.

Most of the above-cited cases concern employment discrimination actions which "typically have been held to fall outside the scope of the [Airline Deregulation Act's] pre-emption clause." Branche, 342 F.3d at 1259.  This Court disagrees with American's argument that discrimination cases are considerably different from this dispute involving the Tips Law (or any Wage and Hour Laws).  An antidiscrimination law and a Wage and Hour law of general applicability are similar in their effect on airline prices, routes, and services.  In both situations, state laws protect airline employees just as they protect any other employees and force airlines as any other employers to avoid some actions they would otherwise take and ultimately to spend more money on their employees.  See, e.g., Abdu-Brisson, 128 F.3d at 77 (ruling that antidiscrimination law is not preempted, although to comply with it an airline has to raise wages for a portion of its pilots and to pay for retirement health plans).

The few courts to address employment law claims outside the discrimination context have also held such claims not preempted. In Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184 (9th Cir. 1998), the Ninth Circuit addressed whether the federal statute preempted a state law requiring employers to pay prevailing wages.  The Ninth Circuit acknowledged that while the prevailing wage law was "in a certain sense" related to prices, routes, and services, the effect was

11

"no more than indirect, remote, and tenuous." <u>Id.</u> at 1189.  The
Ninth Circuit so held even though the defendant contended that
the prevailing wages law increased its prices by 25%, caused it
to utilize independent contractors, and compelled it to re-direct
and re-route equipment to compensate for lost revenue.  <u>Id.</u>
Further, in <u>Santoni Roig</u> v. <u>Iberia Lineas Aereas de Espana</u>, 688
F. Supp. 810 (D.P.R. 1988), a district court held that there was
no conflict between the Airline Deregulation Act and the local
minimum wage and overtime pay laws.  <u>Id.</u> at 818.  In <u>Dayhoff</u> v.
<u>Temsco Helicopters, Inc.</u>, 848 P.2d 1367 (Alaska 1993), the Alaska
Supreme Court reached the same conclusion.  <u>Id.</u> at 1370.

In sum, Congress intended to prevent states from regulating
airlines specifically and thus gave the ADA a broad preemptive
sweep.  A state law is preempted when it has a significant effect
on prices routes, and services.  It is not clear, however, that
Congress intended to exempt airlines from all state laws.  In
particular, it is not clear that Congress intended completely to
overturn the protections for carriers' employees traditionally
provided by states to all employees.  Employment laws are usually
laws of general applicability, not directed to carriers
specifically, which impose bans on primary conduct and regulate
carriers in their capacity as employers, not as carriers.  As a
result, on many occasions it has been recognized that employee's
claims affected airline prices and services only in a tenuous,

remote, and peripheral manner and were not preempted by the ADA. This Court concludes that, although there is no automatic exception to preemption for state employment laws of general applicability, the significant effect test ought be applied here with sensitivity.

### 4. The Rowe Decision

American's main argument is that this Court's _DiFiore_ decision impermissibly contradicts the subsequently decided _Rowe_ decisions and thus this Court ought grant the motion for reconsideration and dismiss this action as preempted.  American claims that in _DiFiore_ this Court denied preemption based on an implicit exception for employment law and that the _Rowe_ decision held that "the ADA contains no such exception for employment claims." Def.'s Mem. in Supp. of Mot. for Recons. [Doc. No. 193] at 4.  American mischaracterizes this Court's earlier decision. First, this Court based its decision in _DiFiore_ on the lack of a significant effect of the Tips Law on airline prices and services, not on some exception for employment laws.[3] _DiFiore_, 483 F. Supp. 2d at 126.  Second, this Court's position that the significant effect test ought be applied with sensitivity to employment laws does not contradict the decisions of either the Supreme Court or the First Circuit in _Rowe_.

---

[3] The effect of the Tips Law on airline prices and services will be discussed _infra_, Part I.B.5.

The facts of the Rowe case are as follows:  In 2003, the Maine legislature adopted its Tobacco Delivery Law.  The law was prompted by the increase in internet sales of tobacco which complicated Maine's efforts to regulate "the sale of tobacco products to minors" and caused it to lose "tremendous tax revenues as a result of tax free sales by unlicensed companies." Rowe, 448 F.3d at 69.  The Tobacco Delivery Law (1) allowed retailers to sell tobacco on the internet only if they utilize delivery by a carrier which fulfills certain procedures prescribed by the law (check identification, deliver only into the hands of addressee, obtain signature).  Id. at 70.  Further it (2) forbade knowing delivery of tobacco from unlicenced retailers, and (3) imposed on carriers constructive knowledge that the package contains tobacco products from the unlicensed retailer.  Id.  The First Circuit held requirements (1) and (3) preempted by the FAAAA, but (2) not preempted.  Id. at 80-82.  The Supreme Court affirmed the First Circuit's determinations of preemption.  Rowe, 128 S. Ct. at 998.

The First Circuit reasoned that regulation (1) "expressly references [a] carrier's service," "prescribe[s] the method by which a carrier operating in Maine must deliver packages," and would affect timely deliveries.  Rowe, 448 F.3d at 79.  The First Circuit noted that this regulation was designed to cause carriers to conform with state imposed-rules even though it was imposed

14

only as a limitation on retailers (requiring them to hire only compliant carriers). Id. Regulation (3), directed to carriers, "amount[s] to prescribing how carriers must operate" and affects timely services. Id. at 82. Therefore, it held regulations (1) and (3) are preempted by the FAAAA. The court rejected the argument that these regulations ought be exempt from FAAAA preemption under the state's police power. Id. at 75-76. "An exclusion from preemption for police-power enactments would surely "swallow the rule of preemption," as most state laws are enacted pursuant to this authority." Id. at 75. Analyzing regulation (2), the First Circuit held that it fell within the state's power to ban primary conduct, it applied generally, and did not "require that carriers modify their delivery methods." Id. at 80. As a result the court held that this regulation was not preempted. Id.

The Supreme Court affirmed. Rowe, 128 S. Ct. at 998. It held that regulations (1) and (3) were directed to carriers, prescribed procedures, and had the effect of requiring carriers to offer services they would not otherwise offer. Id. at 995-6. The Supreme Court rejected Maine's argument that these regulations ought be exempted from FAAAA preemption under a public health exception.[4] Id. at 996-97. The Supreme Court

---

[4] On appeal to the Supreme Court, Maine argued a "public health" exception instead of a more general "public policy" exception to FAAAA preemption.

stated that it was frequently difficult to distinguish (as it was
in that particular case) between health-related and economic-
related state regulations, noting the large number of potential
public health concerns and difficulty in separating permissible
regulations from the impermissible.   Id. at 997.   It concluded
that "Congress is unlikely to have intended an implicit general
'public health' exception broad enough to cover even the
shipments at issue here."   Id.   It stressed:

> In this case, the state law is not general, it does not
> affect truckers solely in their capacity as members of
> the general public, the impact is significant, and the
> connection with trucking is not tenuous, remote, or
> peripheral.   The state statutes aim directly at the
> carriage of goods, a commercial field where carriage by
> commercial motor vehicles plays a major role.

Id. at 997-98.

American wants this Court to read Rowe as prohibiting any
exceptions from the sweep of ADA preemption.   This Court
disagrees.   The Supreme Court did not hold that ADA preemption
was without limit.   It addressed only the situation before it – a
law concerned with public health; and then only to the extent
that such a law directed certain conduct by carriers in their
capacity as carriers (not a law of general applicability).   It
held that regulations justified by the protection of public
health are not exempted from the general rule of ADA preemption.
The Supreme Court did not make it clear how to treat state public
health regulations of general applicability.   It did, however,

uphold the decision that the general prohibition on shipments of tobacco from the unlicensed carriers is not preempted.

The Tips Law is considerably different.  The Tips Law is a law of general applicability (it applies to all employers equally); it does not prescribe compliance procedures to be followed by airlines but rather imposes a ban on primary conduct (forbidding appropriation of tips meant by customers to be retained by employees); and it affects airlines in their capacity as employers not as carriers.  The Tips Law is more similar to Maine's prohibition on the delivery of unlicensed tobacco than it is to the more particularized regulations held preempted in <u>Rowe</u>. <u>See</u> 128 S. Ct. at 996-998.

If anything, therefore, the reasoning in **both** <u>Rowe</u> decisions is supportive of this Court's earlier decision in <u>DiFiore</u>. Here's why:  A question of preemption must be decided on a case by case basis.  <u>Abdu-Brisson</u>, 128 F.3d at 84 (citing <u>Colorado Anti-Discrimination Comm.</u> v. <u>Continental Air Lines</u>, 372 U.S. 714, 719 (1963)).

As the Supreme Court explained in <u>Rowe</u>, due to the vagueness of a state's motivations for the enactment of legislation, it is very hard to carve out whole areas of state laws automatically exempt from ADA preemption.  To create such a categorical exception creates a possibility for states to regulate the airline industry indirectly under cover of that purpose.  <u>Rowe</u>,

17

128 S. Ct. at 997. This Court's <u>DiFiore</u> decision does not stand for the proposition that a categorical exception to ADA preemption ought be applied to employment laws. The Court's position was, and is now, only that the significant effect test must be applied with sensitivity in the area of employment law because the presumption against preemption is heightened in areas of traditional state regulation.

### 5. Applying the "Significant Effect" Test

Contrary to American's argument, the Court denied the original motion to dismiss based on the absence of a significant effect on airline prices and services, not on the basis of some "implicit exception" for employment law. Def.'s Mem. in Supp. of Mot. for Recons. at 4. American failed to show an effect of the Tips Law on airline prices or services sufficiently significant to establish ADA preemption.

The Tips Law forbids employers to take for themselves tips that are meant by customers to be for employees. An effect of the Tips Law on any business is that an employer has to make it clear to the customers that they are paying a fee, not a tip. American's curbside check-in fee looked exactly like a tip both to skycaps and to customers ($2 dollars, cash only, paid directly to skycaps). In order to establish preemption, American has to show that explaining to customers that the curbside check-in fee

18

is not a tip will have a forbidden significant effect on airline prices or services.

American failed to prove that the Tips Law has a significant effect on airline prices.  American's argument concerning the effect on prices is as follows:  American correctly describes the curbside check-in fee as a revenue stream which helps to offset costs.  American thus jumps to the conclusion that, as a matter of freshman economics, this fee affects prices.[5]  But American's argument does not go to the key point:  The Skycaps dispute not the fee itself, but only the manner in which this fee is charged.  Merely changing the manner in which the fee is charged will have no significant effect on airline prices.  As Judge Gertner observed in <u>Brown</u>, changing the manner in which the fee is charged may make a few people refrain from using the service in order to avoid paying the fee,[6] but this affects prices in too

---

[5] It is not as obvious as it seems, however, that this fee directly affects prices given the "yield management" system of establishing prices employed by airlines.  <u>Abdu-Brisson</u>, 128 F.3d at 84-85 (explaining that airline fares largely controlled by the forces of demand and competition, not costs) (citing <u>Morales</u>, 504 U.S. at 389).

[6] Moreover, a decrease in the customers who use the curbside services is a necessary consequence of American's new charge. This charge, is a result of unbundling and, as American itself explains, it is designed to shift the cost for the service to the people who are actually using it.  Formerly, customers had the discretion whether to tip skycaps for the service; the actual costs had to be covered by all American's passengers by including them in the ticket price.  When American implemented a separate charge for curbside baggage handling, the people using it were no longer covered by the rest of the customers and, therefore,

remote a manner to constitute a significant effect. <u>Brown</u>, 2009 WL 3008078, at *3.

American also fails to prove that the Tips Law will have a significant effect on airline services. American claims that it will have to change its practices with respect to collection of the curbside check-in fee, which is a fee for an airline service. Def.'s Mem. in Supp. of Mot. for Recons. at 12-13. This, it claims, will have a forbidden significant effect on airline services. <u>Id.</u> at 13. This Court agrees that curbside baggage handling is an airline service. This Court also agrees that the Tips Law will affect the way the fee for the service is charged, and that changing the way the fee is charged for the service may affect the service itself. American, however, fails to show that any change in the fee assessment for the curbside service will have a forbidden significant effect on the service itself.

The essence of the "service" is what customers expect to get and what Airline is offering. With regard to curbside check-in, as American itself has many times suggested, the "service" provides a fast, easy, and convenient check-in for people who do not want to carry their own baggage or wait in lines. Alteration in the way the fee for the service is charged does not necessarily affect service itself.

---

curbside users had to pay more. As a matter of simple economics the demand will decrease with the increase in the price.

American fails to offer a rationale for a fee payable only in cash and then only directly to skycaps. The obvious rationale, of course, is that adopted by the jury: American was engaged in a crass attempt to snooker the public into parting with the fee under the guise of a tip (which most travelers were accustomed to paying) rather than up-front competition with other airlines as to this aspect of unbundling.

There is no reason why the fee must be charged in this sneaky, disingenuous fashion. For example, the handling fee could be charged simultaneously with the airline's $15 baggage fee which usually is paid by a credit card at curbside during the check-in process. Those customers who checked-in online and have already paid for their baggage, could also pay by credit card at curbside. The fact that customers will use a credit card instead of cash is not a significant change to the nature of the "service," especially in today's society, which has shifted considerably toward electronic methods of payments.

Furthermore, American could well clarify the nature of the charge to its customers through effective signage, website notifications, and the like. The Skycaps here have not categorically rejected such possibilities (which their colleagues did to their sorrow in Brown, thus constraining the Court's analysis there). See Brown, 2009 WL 3008078, at *4. Indeed,

with this last scenario, American does not need to change its cash only requirement at all.

Any of the possible suggested alterations will not significantly change the nature of curbside check-in services: they will not force customers to wait in lines or carry their own baggage.[7]  Thus, American fails to show that the Tips Law has a significant effect on airline services.

As a result, the Tips Law is not preempted by the ADA. Accordingly, American's motion for reconsideration and request for relief from judgement is DENIED.  The judgement awarding Skycaps damages for the violation of the Tips Law will stand.

**C.   Damages**

In their motion to amend judgment, the Skycaps ask this Court to 1) award them fees collected in March and April 2008, 2) award them fees collected from April 8, 2008 through June 15, 2008 and 3) treble the damages awarded.  Pls.' Mot. to Amend J. [Doc. No. 186].  In response, American 1) claims that only 60% of all fees collected in March and April 2008 ought be awarded and 2) claims that damages ought not be trebled.  Def.'s Opp'n to Pls.' Mot. to Amend J. [Doc. No. 190].  Skycaps also seek

---

[7] The Court respectfully disagrees with Judge O'Toole's conclusion that any change to practices employed by airlines will necessarily be related to prices and services. This conclusion simply does not give enough weight to the Supreme Court analysis which cites not any effect but a "forbidden significant effect" on prices and services.  Morales, 504 U.S. at 388.

22

imposition of pre-judgment interest pursuant to Massachusetts
General Laws chapter 231, section 6B, an issue not disputed by
American.

### 1. Fees Collected from March 1, 2008 through April 7, 2008

The jury awarded the Skycaps damages equal to the total
amount of $2 charges they collected through February 28, 2008 as
derived from the parties' stipulations.  Pls.' Mot. to Amend J.
at 2.  The jury also awarded fees collected in March and April
2008 which were not calculated at the time.  Pls.' Mot. to Amend
J. at 2; Jury Verdict [Doc. No. 145].  Now the Skycaps present
calculations of the fees collected from March 1, 2008 through
April 7, 2008 (the day of the verdict).  Pls.' Mot. to Amend J.
at 3.  The amounts of fees are as follows:

| Plaintiff | $2 charges collected, 3/1/2008 through 4/7/2008 | Total damages, 9/1/2005 through 4/7/2008 |
|---|---|---|
| Don DiFiore | $  694 | $42,580 |
| Leon Bailey | N/A | $ 3,066 |
| Ritson Desrosiers | $2,504 | $51,462 |
| Marcelino Coleta | $2,018 | $52,434 |
| Tony Pasuy | $1,340 | $60,110 |
| Laurence Allsop | $  428 | $43,336 |
| Clarence Jeffreys | N/A | $ 6,886 |
| Floyd Woods | N/A | $ 8,028 |
| Andrea Connolly | $1,424 | $65,562 |

American does not dispute these calculations.  Def.'s Mem.
in Opp'n to Pls.' Mot. to Amend J. at 2.  It claims, however,
that only 60% of the fees should be awarded because only this

23

amount was actually retained by American.  Id.  The Court
previously rejected this argument during the trial.

Because the jury awarded the whole amount of the fees
collected by the Skycaps in March and April, the Court amends the
judgment to include the above mentioned amounts.  If some portion
of these fees were retained by G2 rather then by American, it can
seek contribution from G2.

### 2. Fees Collected From April 8, 2008 Through June 15, 2008

The Skycaps seek to amend judgment to include the fees
collected from April 8, 2008 through June 15, 2008.  Pls.' Mot.
to Amend J. at 3-4.  These are the fees collected after the jury
verdict.  They cannot be included in the judgment because they
were never sought nor awarded.  The efficiency argument made by
the Skycaps, that inclusion of these damages will allow dropping
the DiFiore plaintiffs from the related identical lawsuit, Overka
v. American Airlines, Inc., No. 08-10686, misses the point.
There is no legal basis for awarding such damages.  Therefore,
the Court DENIES the Skycaps' motion to amend judgment to include
fees collected from April 8, 2008 through June 15, 2008.

### 3. Treble Damages

The Skycaps ask the Court to treble the damages awarded to
them by the jury based on the newly enacted law amending
Massachusetts General Laws chapter 149, section 150.  The
amendment provides for mandatory treble damages for plaintiffs

24

who prevailed in actions under various sections of the wage law,
including the Tips Law.  Mass. Gen. Laws ch. 149, § 150 (2009)
(effective Jul. 12, 2008).  Ought this law be given a retroactive
effect?

Before the amendment, Massachusetts General Laws chapter
149, section 150 provided in relevant part: "[a]ny employee
claiming to be aggrieved by a violation of section 148 . . . may
. . . institute and prosecute in his own name . . . a civil
action for injunctive relief and any damages incurred, including
treble damages."  The Supreme Judicial Court held that treble
damages were not mandatory.  Wiedmann v. Bradford Group, Inc.,
444 Mass. 698, 709 (2005) (holding that "there is nothing in the
plain language of the statute that requires an award of treble
damages").  According to the Supreme Judicial Court's binding
ruling, treble damages are appropriate where conduct is
"outrageous, because of the defendant's evil motive or his
reckless indifference to the rights of others."  Id. at 710
(quoting  Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 178
(2000)).  In accordance with this standard, during the DiFiore
trial the Court asked the jury to make a factual determination
whether American had acted outrageously with reckless
indifference.  The jury did not so find American's actions
outrageous and did not award treble damages as a result.  The
Skycaps now argue that the Court should disregard this finding

25

because the new law prescribes treble damages without regard to
the outrageousness of the conduct.   Pls.' Mot. to Amend J. at 8.

"The general rule of interpretation ... [is] that all
statutes are prospective in their operation."   <u>Fontaine</u> v. <u>Ebtec
Corp.</u>, 415 Mass. 309, 318 (1993) (quoting <u>City Council of Waltham</u>
v. <u>Vinciullo</u>, 364 Mass. 624, 626  (1974)).   The law "has no
retroactive effect unless such effect manifestly is required by
unequivocal terms."   <u>Id.</u>   The Skycaps do not argue that there
were such clear and explicit terms in this case.   They claim that
the law ought be given retroactive effect because: 1) the Supreme
Judicial Court in <u>Somers</u>, v. <u>Converged Access, Inc.</u>, 454 Mass.
582 (2008), so held; 2) the new law is remedial in nature; and 3)
the new law merely clarified an ambiguity in the law as it stood.
Pls.' Mot. to Amend J. at 4-8.

The Skycaps first argue that the Supreme Judicial Court in
<u>Somers</u> held that automatic treble damages apply to violations
occurring before the effective date of the amendment.   <u>Id.</u> at 4-
5.   In that case, the Supreme Judicial Court vacated in part a
trial court decision granting summary judgment on the issue of
liability to the defendants.   <u>Somers</u>, 454 Mass. at 582.
Summarizing the law at the beginning of its discussion, the court
mentioned that "G.L. c. 149, § 150 authorizes employees . . . to
bring a civil action for 'injunctive relief and any damages
incurred, including treble damages.'"   <u>Somers</u>, 454 Mass. at 589-

90 (citing <u>Weidmann</u>, 444 Mass. at 709-10).  In its conclusion, after reversing the grant of summary judgment, the court repeated that "if [defendants] are unsuccessful, the plaintiff will be entitled under G.L. c. 149, § 150, to 'damages incurred,' including treble damages for 'any lost wages and other benefits.'"  <u>Somers</u>, 454 Mass. at 594.  The Skycaps argue that the word "will" in the court's conclusion indicates the court's opinion that the new statute ought be applied retroactively. Pls.' Mot. to Amend J. at 5.  At no point, however, did the Supreme Judicial Court discuss the issue of retroactivity.  It seems unlikely to the point of insignificance that such a distinguished court meant to include inconsistent statements of law at the beginning and at the end of its analysis.  Thus, this Court agrees with American that, in both sentences the Supreme Judicial Court was just listing damages available for the plaintiff, but expressing no opinion as to which version of the statute authorizes such damages.  Thus, the <u>Somers</u> case does not mandate that the recent amendment be given retroactive affect.

Second, the Skycaps argue that the new law ought apply retroactively as a law regarding remedies.  <u>Id.</u> at 6.  "It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action."  <u>Fleet Nat'l</u>

27

<u>Bank</u> v. <u>Comm'r of Revenue</u>, 448 Mass. 441, 449 (2007) (quoting

<u>Hanscom</u> v. <u>Malden & Melrose Gas Light Co.</u>, 220 Mass. 1, 3

(1914)).  The Massachusetts courts interpreted "laws relating to

remedies" narrowly to embrace only those laws that do not affect

substantive rights:

> It appears from the context, and from a review of our
> prior decisions, that the term 'remedies,' as it was used
> in <u>Hanscom</u> v. <u>Malden & Melrose Gas Light Co.</u>, <u>supra</u>, has
> only encompassed essentially procedural legislation which
> preserves a remedy that might otherwise be lost, or which
> creates a new enforcement mechanism for remedying the
> impairment of an existing legal right.

<u>Fontaine</u>, 415 Mass. at 319.  <u>See, e.g.</u>, <u>Goodwin Bros. Leasing</u> v.

<u>Nousis</u>, 373 Mass. 169, 173 (1977) (creating condition precedent

to filing civil action by foreign corporations); <u>Chakrabati</u> v.

<u>Marco S. Marinello Associates, Inc.</u>, 12 Mass. 633, 641-42 (1985)

(expansion of jurisdiction of Housing Court); <u>Wetherell</u> v. <u>Boston</u>

<u>Mut. Life Ins. Co.</u>, 18 Mass. App. Ct. 614, 617-618 (1984)

(expansion of jurisdiction in a civil litigation and expansion of

the right to jury trial).

To the contrary, a law that affects the substance of the

legal rights, whether extinguishing an existing right or creating

a new one, cannot be applied retroactively.  <u>See</u> <u>Fleet Nat'l</u>

<u>Bank</u>, 448 Mass. at 449 (refusing to give retroactive effect to a

law changing the date upon which a taxpayer is entitled to a

refund, with interest thereon, for the overpayment of taxes);

<u>Austin</u> v. <u>Boston University Hospital</u>, 372 Mass. 654, 658 (1977)

(holding that law requiring preliminary hearing by tribunal in every action for medical malpractice, error, or mistake was substantive in nature and not retroactive).

According to the former version of Massachusetts General Laws chapter 149, section 150, an employee whose rights were violated under the Tips Law or certain other provisions of the employment law had no right to recover treble damages so long as the employer's conduct was not outrageous.  According to the amendment, an employee now has a right to recover treble damages from the employer for the same violation, without regard to whether the employer's conduct was outrageous.  The amended law changes the substantive rights of employers and employees.  It cannot be applied retroactively without a clear indication of legislative intent.

Finally, the Skycaps assert that the new statute was enacted as clarification of the existing law.  Pls.' Mot. to Amend J. at 7.  They urge this Court to follow the example of Swift v. AutoZone, Inc., 441 Mass. 443 (2004).  In that case, the Supreme Judicial Court used a newly amended version of a statute to interpret the original statute.  Id. at 449 (holding that legislature's swift action in the wake of a Superior Court judge's ruling was "strongly suggestive of Legislature's intent behind the original statute").  This is not an argument in favor of retroactivity, but rather an argument that this Court's

original interpretation during the trial was erroneous, the amended statute being evidence of the arguably proper interpretation.[8]

In Swift, the Supreme Judicial Court had to interpret an ambiguous original statute.  Swift, 441 Mass. at 447.  The court thus considered the statutory language, the legislative history and the equivalent federal statute.  Id. at 447-49.  One of the arguments in favor of the interpretation ultimately adopted was the "swift legislative action" in response to a Superior Court judge's interpretation of the original statute.  Id. at 449.  The court concluded that this swift action, among other factors, reflected the original legislative intent.  Id.

The situation in the present case is different.  The Court has already analyzed and applied Massachusetts General Laws chapter 149, section 150 as it stood prior to amendment.  That statute was not ambiguous and was interpreted in accordance with settled Massachusetts precedent.  The only new factor that could possibly prompt reconsideration is adoption of the new amendment.[9]

_____

[8] This Court ought reconsider its decision if a party either presents previously unavailable evidence or show that a manifest error of law was committed.  Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006).

[9] If the Skycaps want to rely on arguments available to them during the trial – such as that the old law was ambiguous due to inconsistent Superior Court decisions preceding Weidmann or that the proposed but never enacted 2005 amendment indicated the legislative intent behind the original statute – they have to show a manifest error in the Court's interpretation. The Skycaps

It is hard to see, however, why the new version of the law is something more than a mere change and why this amendment has to change the Court's decision.  Unlike <u>Swift</u>, the amendment was not an immediate reaction to any application of the law, by this or any other court, arguably contrary to the intent of the Massachusetts Legislature.  The interpretation of Massachusetts General Laws chapter 149, section 150, followed by this Court was established by the Supreme Judicial Court in <u>Wiedmann</u> in 2005 and remained in place for more than three years before the new version of the law came into effect.  The Skycaps can point to no clear indication that the new law was meant to explain what the original law always meant, rather than simply to amend it, always a legislative prerogative.  Thus, the Skycaps' argument fails.

To sum up, the newly enacted amendment to Massachusetts General Laws chapter 149, section 150, is a law that changes the substantive rights of parties as they existed under the original version.  The Legislature has not explicitly stated that this law is to be applied retroactively.  Thus, the new version of the law will not be applied in this case.  Therefore, the Skycaps' motion to amend the judgment to treble the damages is DENIED.

---

fail to do so.

**II.   CONCLUSION**

Accordingly, American's motion for reconsideration of the motion to dismiss and request for relief from judgment [Doc. No. 192] is DENIED.  The Skycaps motion to amend judgment [Doc. No. 186] is ALLOWED IN PART and DENIED IN PART.  The judgment is amended to include fees collected from March 1, 2008 trough April 7, 2008 as calculated and the pre-judgment interest.  The Court denies adding fees collected from April 8, 2008 through June 15, 2008 and trebling the damages.


SO ORDERED.


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE